## ALBANY FERTILIZER AND FARM IMPROVEMENT COMPANY *v.* ARNOLD.

1. Whether the action of a corporation in rescinding a resolution previously adopted, by which a dividend upon its capital stock had been declared, was or was not in a given instance valid, if in a resolution declaring another and distinct dividend it was expressly provided that the same was to be in lieu of the former dividend, and if a shareholder accepted payment of this latter dividend with knowledge of and in accordance with the terms of the last-mentioned resolution, he was estopped from claiming payment of the first dividend.
2. The evidence in this case demanded a finding that the plaintiff below, while his action against the company for the first dividend was pending, accepted payment of the second dividend on the terms and conditions above recited; and this being so, a verdict in his favor for the dividend sued for was contrary to law, and should have been set aside.

Argued October 23, — Decided November 29, 1897.

Complaint. Before Judge Spence. Dougherty superior court. June 30, 1897.

*D. H. Pope,* for plaintiff in error. *Jesse W. Walters,* contra.

LITTLE, J.   Arnold brought suit against the Albany Ferti-
lizer & Farm Improvement Co., alleging that such company
was indebted to him $148.80, besides interest from January
1st, 1895, being the amount of a dividend alleged to have been
declared to be due by the company to the plaintiff as a stock-
holder in said company, on certain shares held by him.   The
defendant in its answer admitted that Arnold was a stock-
holder, as was alleged, and that a dividend had been declared
by the company as alleged; but averred that before the divi-
dend was paid the directors of said company found that it had
been illegally and improperly declared, because the company
did not at the time it was declared, nor when it became due
and payable, have money in profits from the business of the
company with which to pay the same; and that on December
31, 1894, the directors of the company rescinded the resolu-
tion declaring such dividend, because it was illegally declared.
The petition in the case was filed in the office of the clerk of
the superior court on the 16th day of September, 1895.   It ap-
peared from the evidence, that on the 6th day of June, 1894,
the directors of the fertilizer company declared a dividend,
which was to be paid on January 1, 1895, to the stockholders.
Whether or not there were net profits from the business of the
company sufficient to have declared and paid that dividend, is
a question about which the evidence is conflicting.   But whether
or not the company did have such net profits on hand at the
time the dividend was declared, it is not now necessary to de-
cide, as we put the case on another and different ground.   Be
that as it may, on the 31st of December, 1894, the stockholders
of the fertilizer company, by a resolution, revoked the decla-
ration of the dividend declared on the 6th of June, reciting
that that dividend was declared on the presumption that the
earnings of the company would warrant the declaration and
payment of the dividend, but that at that time, December 31,
1894, it was plainly evident that the dividend could only be
paid by borrowing money, and that the earnings of the com-
pany would not justify it.   It seems that the defendant in
error was present at that meeting, and entered a protest to this
revocation, and that in September thereafter he brought suit

to recover the dividend so declared. On the 1st of October, 1895, after the commencement of the suit, the board of directors of the fertilizer company passed a resolution, that a dividend of four per cent. was declared out of the company's profits, payable in cash at the office of the company on the 10th day of December, 1895, and that this dividend was to be in lieu of what was alleged to be the illegal and improper dividend declared on June 6th, 1894. By that resolution the secretary and treasurer of the company was required to add to the usual form of receipt taken from stockholders in acknowledgment of dividends paid, these words: "in full of all dividends declared to date." This last resolution was published in the papers, and, as shown by the testimony of defendant in error, came under his notice. It further appears from the evidence, that on the morning of December 10, 1895, or on the preceding day, defendant in error went to the office of the secretary of the company, and told him that he had come to get the dividend. The secretary stated to the defendant in error that he wanted him to sign a receipt, and Arnold said he would not sign a receipt until he got something to receipt for. In reply to the statement of the secretary that he was going to give him a check, Arnold said he would not take a check, because that was not legal tender; then the secretary said he would get the money and bring it to him. On the next morning the secretary went to the office of Arnold with a bag which had money in it, and told him that he had brought the dividend. The money was then poured on the table and counted, being all gold except a small amount in silver; and being found correct, Arnold put the money back in the bag and placed it away in his safe. The secretary then asked Arnold for a receipt, and handed him the usual form of receipt for his signature. This Arnold took, and erased that portion which declared this sum to be in lieu of all other dividends theretofore declared. The secretary declined to accept such receipt. It seems that the contention of the defendant in error in his suit in the court below was, that he was entitled to both dividends, as both had been declared; that he had received one, and was prosecuting that suit for the other. On the trial of the case the jury found

for the plaintiff $148.80, being the amount of the dividend declared on the shares held by Arnold. There was a motion for a new trial, which was overruled, and the plaintiff in error excepted. There are several grounds in the motion for a new trial, only one of which we consider it necessary to review.

1. The first ground of the motion for a new trial is, that the verdict is contrary to the evidence, and without evidence to support it. This contention we think to be right. The contention of the defendant in error below was, that the first and last dividends which were declared, being separate and distinct dividends, were both collectable. The policy of our law, as indicated in section 1968 of the Civil Code, is that dividends shall not be declared except from net profits. Subject to this policy of our State, it is undoubtedly true that a dividend properly declared by the directors of a corporation can not subsequently be revoked; and that persons who are shareholders at the time the dividend is declared have a legal claim against the company for the payment of the amount of the dividend; and that after profits have been set apart and appropriated to the payment of the dividends, they belong to the shareholders and can not be recalled, even though the company should suffer losses and become insolvent before the dividend is actually paid. Morawetz on Private Corporations, § 455. See also LeRoy *v.* Globe Ins. Co., 2 Edwards Chancery, 657; In re Le Blanc, 14 Hun, 8. Mr. Thompson, in his work on Corporations, vol. 2, § 2131, says: "If a dividend has been declared and a fund appropriated to its payment, this fund acquires the character of a trust fund. It must therefore be regarded as the property of the shareholders, and can not be applied by the directors to any purpose not included in their charter or fundamental contract, without the consent of such shareholders." Following these principles, the Supreme Court of New Jersey, in King *v.* Paterson & Hudson R. R. Co., 29 N. J. Law, 82, says: "A dividend declared by a corporation becomes the individual property of the stockholder. It may be demanded by the stockholder, and if payment is refused, he may bring an action against the company for money had and received to his use." Mr. Thompson further says (§ 2135), in

connection with the principles enunciated above: "It is assumed that there can be no question of the power of the corporation to recall an ultra vires dividend. Until the dividend is paid there is a locus pœnitentiæ; neither the corporation nor its directors who have committed the fault are obliged to go on and consummate an illegal act which is merely in fieri." In the present case, as we have said, the evidence is conflicting as to whether there were funds sufficient at the time the dividend was declared, and at the time that it became due, for its payment out of the profits of the business of the company. But whether in fact the company had such funds, and if in fact the first dividend declared was legal and valid in all respects, we yet hold that the plaintiff below was not entitled to recover. In October, 1895, the company, through its board of directors, declared another dividend for exactly the same amount as that of the 6th of June, 1894. A part of that declaration, however, recited the illegality of the former declared dividend on account of want of funds, and expressly made the payment and acceptance of this last dividend to be in lieu of the former one declared. It is evident that the directors did not intend to declare two separate and distinct dividends. It was their contention that the one of the 6th of June, 1894, was invalid because the company did not have the funds with which to pay it, and that if it was paid it could only be done by borrowing the money for that purpose. It is true that this contention was disputed by the defendant in error; but whichever may be correct, it is nevertheless true that in October, 1895, when the company did have the funds, they set aside a sufficient amount to pay four per cent. dividend in lieu of the former one. This being the condition upon which this last dividend was declared, under the contention that there was no fund from which to pay the first, a shareholder who accepted payment of such last declared dividend on his shares of stock did so in accordance with the terms of the resolution declaring the last dividend; and having accepted such payment under the conditions named, he is estopped from claiming payment of the first.

2. There is no substantial contention between the parties as

to what occurred at the time of the payment to the defendant in error of the dividend on his shares, which was made after the bringing of this suit, to wit on December 10, 1895. It is admitted by the defendant in error that he saw this resolution of the stockholders published in the newspapers. He was then aware of its terms. He went to the office of the secretary and demanded the payment of his dividend; he declined to take a check but demanded legal tender, and declined to sign the receipt until he had something to receipt for. On the next day the money was carried to the office of the defendant in error. What took place on that occasion was but a continuation of the transaction of the preceding day. Legal tender money sufficient to pay the dividend was poured out of a sack and counted, found to be correct, and was placed by the defendant in error in his safe. It was then that the secretary asked for his receipt. He was entitled to that receipt, or to have the money returned. The defendant in error refused to sign the receipt, which recited that the money he had just placed in his safe was to be in lieu of the dividend declared in 1894. The fact that he did refuse to sign it does not relieve him of its terms. Under the circumstances, his acceptance of the money so paid him, with or without a receipt, was subject to the terms of the resolution declaring it to be in lieu of the dividend of 1894. This being true, a verdict rendered in favor of the defendant in error, finding for him against the company the amount of the dividend declared on the 6th of December, 1894, was contrary to law; and the judgment of the court below overruling the motion for new trial must be      *Reversed. All the Justices concurring.*